Nani ZSUPNIK, Petitioner,

v.

STATE of Alaska, Respondent.

No. S–3360.

Supreme Court of Alaska.

April 6, 1990.

**358**

William Bixby, Law Offices of William Bixby, Valdez, for petitioner.

Robert D. Bacon, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for respondent.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

This is a review of the decision of the court of appeals in *Zsupnik v. State*, 772 P.2d 1098 (Alaska App.1989). It presents the issue of whether breath test evidence taken from a person arrested for DWI should be excluded when that person has been denied a request to contact a relative with the intent to obtain legal representation before administration of the breath test.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The facts are simple and not in dispute. The court of appeals summarized them as follows:

(Nani) Zsupnik was arrested for DWI in Valdez. Upon arrest, she repeatedly requested the opportunity to contact her uncle. Although she intended to ask her uncle for assistance in finding an attorney, Zsupnik did not make her purpose known to the police, nor did she directly request an opportunity to contact an attorney. The police told Zsupnik that she would not be allowed to call her uncle until she had completed the process of taking the Intoximeter test. Zsupnik proceeded to take the test, which revealed a score in excess of the legal limit.

*Zsupnik,* 772 P.2d at 1098.

Facts from the record show that Zsupnik, then age 21, made four separate requests to telephone her uncle. All were denied. Zsupnik's fourth request was specific: she wanted to call her uncle to ask for advice as to "what to do."

Prior to trial, Zsupnik moved to suppress the results of her breath test, asserting a violation of AS 12.25.150(b). *Zsupnik* at 1098. The superior court denied her motion, and the results of the test were introduced at trial. *Id.* at 1099. Zsupnik was convicted. *Id.*

Zsupnik argued on appeal that both the plain language of AS 12.20.150(b), as well as our decision in *Copelin v. State,* 659 P.2d 1206 (Alaska 1983), *cert. denied,* 469 U.S. 1017, 105 S.Ct. 430, 83 L.Ed.2d 357 (1984), mandate that DWI suspects be allowed to call either attorneys *or* relatives before being subjected to a breath analysis. *Zsupnik* at 1099. The court of appeals rejected Zsupnik's argument, reasoning:

Although the literal provisions of AS 12.-25.150(b) and Alaska Criminal Rule 5(b) do not distinguish between attorneys, relatives and friends, the Supreme Court's decision in *Copelin* was expressly limited to calls made for the purpose of consulting with counsel. In deciding to read the language of AS 12.25.150(b) and Alaska Criminal Rule 5(b) as requiring an opportunity to call counsel before administration of a breath test, the *Copelin* court carefully weighed the state's interest in promptly obtaining valuable evidence against the substantial individual interest

in consulting with an attorney before deciding whether to submit to a breath test. Concluding that the right to consult with counsel was of compelling and overriding significance under the circumstances, the court required that the individual right be given priority over the police interest in obtaining prompt test results.

In cases where DWI arrestees are interested in calling a friend or a relative, rather than an attorney, however, there appears to be no equally compelling interest to tip the balance away from allowing the police to complete the routine DWI arrest process, except to the extent that the arrestee's purpose in calling a friend or relative is to secure counsel ... [When] this purpose is adequately communicated to the police, an immediate call must be allowed.... [However, when] no reason is given by a DWI arrestee for a request to contact a friend or relative, the police may defer the request until [after the breath analysis].

*Id.* at 1099 (citations omitted).

We reverse.

## II. DISCUSSION

### A. THE COURT OF APPEALS ERRED IN DECIDING THAT ZSUPNIK'S AS 12.25.150(b) RIGHTS HAD NOT BEEN VIOLATED.

■ The question before the court is one of statutory interpretation. We thus determine the matter freshly. *E.g., State v. Patterson,* 740 P.2d 944, 946 n. 7 (Alaska 1987). In doing so, we adopt the rule of law which is most persuasive in light of precedent, policy and reason. *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

AS 12.25.150(b) sets forth the rights of prisoners after arrest:[1]

Immediately after an arrest, a prisoner shall have the right to telephone or otherwise communicate with the prisoner's attorney and any relative or friend, and any attorney at law entitled to practice in the courts of Alaska shall, at the request of the prisoner or any relative or friends of the prisoner, have the right to immediately visit the person arrested.

■ Zsupnik contends that the meaning of AS 12.25.150(b) is plain. The state concedes that AS 12.25.150(b) does not differentiate on its face between calls to attorneys and those to relatives or friends. Instead, the state argues that the rationale articulated in *Copelin* does not support interpreting the immediacy requirement of AS 12.25.150(b) to require pre-test communication with a non-lawyer.

The statute, however, is unambiguous. "Immediately after an arrest, a prisoner shall have the right to telephone or otherwise communicate with ... any relative or friend...." In interpreting a statute, this court looks first to its language. *Ward v. State,* 758 P.2d 87, 90 n. 5 (Alaska 1988). "Where a statute's meaning appears clear and unambiguous ... the party asserting a different meaning bears a correspondingly heavy burden of demonstrating contrary legislative intent." *Id.* The immediacy requirement of AS 12.25.150(b) is an example of such a clear and unambiguous statute. *See Copelin,* 659 P.2d at 1211 ("immediately" means just that). Since this same immediacy requirement is at issue here, the burden is on the state to show that the legislature intended a distinction between attorneys and non-attorneys.

In the present case, no such showing can be made. The legislative history of AS 12.25.150(b) is clear. It does not support the state's case. Subsection (b) is intended to give the prisoner a right "to call *both his relatives and a lawyer.*" 1962 House Journal 230 (emphasis added). The legislature expressly disapproved the then prevalent practice of allowing a prisoner only one phone call to only an attorney. *Id.* Both the statute and its history are clear

---

**1.** Similarly, Alaska R.Crim.P. 5(b) provides:
Immediately after his arrest, the prisoner shall have the right to forthwith telephone or otherwise communicate with both the attorney and any relative or friends. Any attorney at law entitled to practice in the courts of Alaska, at the request of either the prisoner or any relative or friend of the prisoner, shall have the right forthwith to visit the prisoner in private.

that distinctions are not to be drawn between calls to relatives and attorneys.

The state nonetheless argues that the rationale underlying *Copelin* was solely to permit an arrestee to have access to legal advice in order to make an informed decision between taking the breath test and running the risk of a DWI conviction, or refusing the test and suffering numerous legal penalties. *See Copelin,* 659 P.2d at 1213 n. 17. The state further argues that the only thing Zsupnik's uncle could have done was to give her moral support and help her make bail, which it contends ought to wait until after the breath test. The state's argument both ignores the obvious and misunderstands *Copelin.*

In *Copelin,* we unanimously held that "one intended purpose of AS 12.25.150(b) is to provide an arrestee with the opportunity to obtain legal advice." *Copelin,* 659 P.2d at 1211. We also noted, however, that this is not the sole purpose. *Id.* at 1210–11. Another purpose, alluded to in *Copelin* and discussed more fully in *Eben v. State,* 599 P.2d 700 (Alaska 1979), is "the right to contact an attorney, *relative or friend for the purpose of arranging* bail or *legal representation." Eben,* 599 P.2d at 710 n. 27 (emphasis added). We believe the statute is intended to serve, among others, the broad goal of preventing suspects from being held incommunicado. The legislative history supports this proposition.

7 AAC § 30.020 requires that the arrestee be observed by the Intoximeter operator for at least 20 minutes immediately prior to testing to assure that the arrestee does not regurgitate or place anything inside his mouth which might invalidate the breath test result. While being "mindful of the important state interest in obtaining reliable evidence," we reasoned that no additional delay is incurred by allowing the arrestee to make a phone call during that time. *Copelin* at 1211. *Copelin* makes clear that the arrestee has no right to unreasonably delay in contacting someone

so as to impair breath testing. *Id.* at 1212 n. 14; *cf. Blue v. State,* 558 P.2d 636, 642 (Alaska 1977) (the burden is on the state to show that an accused demanded an unreasonable amount of time and thereby interfered with the "prompt and purposeful investigation" of the case).

The rationale underlying *Copelin* is thus not as the court of appeals interpreted it. A "balancing test" was not employed to create a right to a pre-test phone call from whole cloth. We simply applied a plain and unambiguous statute which created the right. We then held, consistent with our method of applying unambiguous statutes, that no sufficient policy reason appeared to place a strained meaning on its language. *Copelin* at 1210–11. "Immediately" means just that—immediately. Similarly, the "right" of a prisoner to "immediately ... telephone ... any friend or relative" needs no interpretation. No balancing is required, or appropriate.[2]

Upon re-examination, we conclude that there is no sound policy reason to depart from the plain and unambiguous language of AS 12.25.150(b). Talking to a friend or relative within this "reasonable time" will not dissipate any more evidence than talking to an attorney within this same "reasonable time." As the state notes in its brief, "a telephone conversation cannot affect the alcohol content of the air in the defendant's lungs." At the end of a "reasonable time," the police may insist that the breath test proceed, regardless of who the arrestee wants to talk to. *Copelin* at 1212. Reasonableness varies with the facts of each case, such as the amount of time between the stop and the transportation to the station, when the request is made, and how much time is needed to set up the test device. *Id.* To restate the obvious, however, this will necessarily give the arrestee at least the 20 minute mandatory delay period after arrival at the station. *See id.* at 1211 n. 13. The state is no

---

**2.** We reaffirmed this rationale as the basis for *Copelin* in *Whisenhunt v. Dep't of Public Safety,* 746 P.2d 1298, 1299 (Alaska 1987) (Matthews, J.) ("Our concern that the accused be treated fairly, together with the language of the statute and the

rule, led us to recognize that right."). *See also id.* at 1299 n. 5 ("We emphasize the fact that the right recognized in *Copelin* is a *statutory* right, 659 P.2d at 1206.") (emphasis added).

more prejudiced if the arrestee calls a relative instead of an attorney during the 20 minute period.

Zsupnik was denied her right to telephone access during the 20 minute period after her arrival at the station. A reasonable time could not have elapsed.[3] Zsupnik's rights under AS 12.25.150(b) have therefore been violated.

### B. THE APPROPRIATE REMEDY FOR THE VIOLATION OF ZSUPNIK'S AS 12.25.150(b) RIGHTS IS EXCLUSION OF THE BREATH TEST RESULTS.

It is settled that the remedy for violations of AS 12.25.150(b) for purposes related to the defense process is exclusion of tainted evidence.[4] *Copelin* at 1214–15. The state urges us to reconsider *Copelin* and hold that the criminal sanctions provided in AS 12.25.150(c)[5] are exclusive in all cases. We decline to do so.

In *Copelin*, we reasoned that the refusal of a telephone call after the arrestee is in custody at a station involves an intentional act in a situation where an officer can calmly reflect on his action before taking it. *Copelin* at 1214–15.[6] *See also Prideaux v. State Dep't of Public Safety*, 310 Minn. 405, 247 N.W.2d 385, 395 (1976) (using similar rationale and applying the exclusionary rule to violations of a similar statute).

Since *Copelin*, the propriety of the exclusionary rule in breath test cases has been twice unanimously extended and reaffirmed. *Whisenhunt v. Dep't of Public Safety*, 746 P.2d 1298 (Alaska 1987) (Matthews, J.) (unanimous decision excluding the breathalyzer results in a civil license revocation hearing for an AS 12.25.150(b) violation); *Ward v. State*, 758 P.2d 87, 90 (Alaska 1988) (Rabinowitz, J.) (police refusal to allow the arrestee to get a second testing of his breath under AS 28.35.-033(e)). In *Ward*, we reasoned that "the breathalyzer test ... provides time for reflection before action and ... consists of intentional efforts by the police to obtain evidence," and therefore "application of the exclusionary rule will serve to deter future illegal police conduct." *Id.*, *quoting Copelin* at 1214.

The state contends, for the first time at oral argument, that application of the exclusionary rule to this case would not serve to deter future police misconduct, because the police may have acted in reliance on the court of appeals decision in *Van Wormer v. State*, 699 P.2d 895, 898 (Alaska App. 1985). In *Van Wormer*, the court of appeals adopted a "totality of the circumstances" approach to determining whether a prisoner "requested an opportunity" to call an attorney. *Van Wormer*, 699 P.2d at 898. Its opinion emphasized that it is "only where the totality of the arrestee's words constitute a request, express or im-

---

3. What constitutes a reasonable time will vary with the facts of each case. In a DWI case, however, because the state must wait 20 minutes as a matter of law, this time is *per se* reasonable. We do not reach the issue of what is a reasonable time for other alleged criminal violations.

4. Because the state concedes that Zsupnik's purpose in seeking to call her uncle was to obtain a lawyer, we need not reach the issue of whether the refusal of calls by an arrestee for purposes other than obtaining attorney assistance requires the exclusion of evidence.

5. AS 12.25.150(c) provides for the possibility of criminal sanctions for violations of subsection (b) rights:

    (c) It shall be unlawful for an officer having custody of a person so arrested to wilfully refuse or neglect to grant the prisoner the rights provided by this section. A violation of

this section is a misdemeanor, and, upon conviction, the offender is punishable by a fine of not more than $100, or by imprisonment for not more than 30 days, or by both.

6. The dissent in *Copelin* centered on the notion that *Copelin* for the first time made it clear to the police that violation of AS 12.25.150(b) was illegal. *Copelin* at 1217 (Compton, J., dissenting). Contrary to the state's suggestions, the dissent did not contend that AS 12.25.150(b) violations were not of sufficient moment to merit application of the exclusionary rule. Rather the dissent argued that the court should wait and see whether the criminal provision of AS 12.25.150(c) would provide sufficient deterrence against future violations. *Id.* at 1216. Application of the exclusionary rule was thought to then be "premature." *Id.* at 1217. Even so, the dissent cautioned that should violations of AS 12.25.150(b) continue, the exclusionary rule would be appropriate. *Id.*

plied, for an opportunity to contact counsel for the purpose of discussing a breathalyzer examination that an opportunity to consult counsel must be provided...." *Id.* The court of appeals then held that a statement by the arrestee to the effect that he "wished to have someone present" at the administration of the breath test was not a sufficient request *for an attorney. Id.* While we agree that a "totality of the circumstances" test is appropriate for determining whether a request to speak to someone is made, to the extent that *Van Wormer* suggests that the request must specifically be for an attorney, it is inconsistent with our decision today and is overruled. The approach of *Van Wormer* places too high a premium on the sophistication of the arrestee: the arrestee retains her statutory rights only if she is able to intone the proper incantation for legal assistance.

While police reliance on *Van Wormer* is plausible, we nonetheless conclude that application of the exclusionary rule is appropriate. First, reliance on *Van Wormer* is a slender reed on which to lean, due to its inconsistencies with *Copelin* and its progeny, as well as with the stark clarity of AS 12.25.150(b). Second, the conduct of the police here probably would justify relief even under *Van Wormer's* limited approach. Zsupnik made four separate requests for phone access, and on the last attempt made clear that she sought advice as to "what to do." Third, the number of times Zsupnik's requests were refused implies intentional conduct. Fourth, our commitment to applying the exclusionary rule in DWI cases has been extended beyond *Copelin* itself, *see, e.g., Ward,* thus putting the police on notice that they should tread carefully under such circumstances. While the degree of caution with which the police ought to proceed was in dispute when *Copelin* was decided, it cannot fairly be said to be disputable now. Fifth, there is no evidence that the police here relied on *Van Wormer.*

■ In urging us to overrule *Copelin* and its progeny, two other contentions mer-

it brief mention. The state contends that AS 12.25.150(b) is ambiguous as to what constitutes an "arrest," and urges us to hold that a DWI arrest is not complete for purposes of AS 12.25.150(b) until after the breath test is given. This contention is frivolous, since the state conceded in its statement of facts that Zsupnik was under arrest when she arrived at the station. Moreover, it was necessarily rejected in deciding *Copelin.* Lastly, this contention overlooks AS 12.25.160, which defines arrest as follows: "Arrest is the taking of a person into custody in order that the person may be held to answer for the commission of a crime."

Plainly, Zsupnik was in custody to answer for the commission of a crime when she arrived at the police station for the purpose of being given a breath test. *Copelin v. State,* 676 P.2d 608, 609 (Alaska App.1984) (on remand from *Copelin*); *Goss v. State,* 390 P.2d 220, 224 (Alaska 1964); *Ward* at 88 (court assumes that a DWI suspect taken to the station and detained for the 20 minute waiting period is under arrest). *See generally Howard v. State,* 664 P.2d 603, 607–11 (Alaska App.1983). *Compare Greenawalt v. Municipality of Anchorage,* 692 P.2d 983 (Alaska App.1985) (court, in finding suspect not yet arrested, stressed that suspect opted to take a blood sobriety test at the scene *instead of going to the station house and having it done*).

■ The state also contends that under *Copelin* an attorney is rarely, if ever, able to advise a client of reasons not to take the breath test without running afoul of DR 7–102(A)(7) of the Code of Professional Responsibility. The state then urges us to reconsider *Copelin* because it is "based on a defendant's right to ask a lawyer whether or not he should commit a criminal offense," creating ethical problems for attorneys. This argument lacks merit.

The Alaska Bar Association has recognized that the "Catch–22" of AS 28.35.-032(f) [7] does not create inevitable ethical problems for attorneys advising DWI ar-

---

7. AS 28.35.032(f) makes it a class A misdemean-    or to refuse to submit to a breath test.

restees. Alaska Bar Ass'n Ethics Opinion 84–1 (Opinion).

DR 7–102(A)(7) provides: "In his representation of a client, a lawyer shall not ... counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent." The state's argument is based on the premise that a lawyer is too often tempted by the *Copelin* pre-test phone call to advise his client to commit a misdemeanor rather than take a breath test, thereby perhaps violating DR 7–102(A)(7). There is nothing improper about explaining the alternatives (take the breath test or risk prosecution under AS 28.35.032(f)) to a client and allowing her to make an informed decision. "Justice requires that citizens be entitled to advice concerning the legality of prospective conduct, as well as the prospective consequences of alternative courses of action." Opinion at 4.

Additionally, we recognized in *Copelin* that "the decision as to whether to comply with an arresting officer's request to take a breath test is not a simple one. Clearly, an attorney's advice at this stage *would not only be ethical and lawful*, but helpful." *Copelin* at 1213 (emphasis added).

## III. CONCLUSION

The judgment of the court of appeals is REVERSED with directions to REMAND the case to the district court for proceedings consistent with this opinion.

MATTHEWS, Chief Justice, with whom RABINOWITZ, Justice, joins, dissenting.

I agree that Zsupnik was denied her right to telephone access under AS 12.25.-150(b). That statute unambiguously provides persons arrested with the right to communicate with an attorney, relative or friend "immediately" after arrest, making no distinction between attorneys and non-attorneys. However, I do not agree that exclusion of the breath test is an appropriate remedy.

The exclusionary remedy is not expressly provided for by statute, nor is it compelled by legislative history.[1] It is a judicially created remedy first announced in *Copelin v. State*, 659 P.2d 1206, 1214 (Alaska 1983). In *Copelin*, we applied the "*Sundberg* analysis", *Id.* at 1214, which is a method for determining whether to apply a "judicially created exclusionary rule" in the absence of a legislative directive. *See State v. Sundberg*, 611 P.2d 44, 50–51 (Alaska 1980).

A judicially created exclusionary rule does not necessarily apply to all violations of the underlying right. *See United States v. Leon*, 468 U.S. 897, 906, 104 S.Ct. 3405, 3412, 82 L.Ed.2d 677 (1984) [whether the Fourth Amendment exclusionary rule applies "is 'an issue separate from the question whether the Fourth Amendment rights of the party ... were violated.'"] Instead, whether the exclusionary sanction is appropriate in a given case is "resolved by weighing the costs and benefits" of depriving the state of relevant evidence. *Id.* at 906–07, 104 S.Ct. at 3411–12.

In *Copelin*, we identified two benefits obtained by suppression of evidence where the defendant is denied a pre-test phone call to his attorney: (1) deterrence of future illegal police conduct; and (2) prevention of state interference with the defendant's ability to present a defense at trial. 659 P.2d at 1214–15. These benefits were held to outweigh the state's interest in obtaining relevant evidence, so long as the attempted communication did not unreasonably interfere with the police investigation. *Id.* There being no such interference, exclusion was found to be appropriate. *Id.*

As today's opinion points out, the first objective (deterrence) is advanced regardless of whether the person who the arrestee desires to contact is an attorney. However, the second objective (prevention of interference with defense decisions), is advanced, if at all, only minimally if the person to be contacted is not a lawyer and the subject of the desired conversation does

---

1. The statute expressly provides for criminal and civil remedies, AS 12.25.150(c) and (d), but does not require exclusion of evidence obtained as a result of a violation.

not relate to obtaining legal advice.[2]

Given the inapplicability of the second purpose, the court of appeals reasoned that the state's interest in obtaining highly relevant evidence was, on balance, of more weight, and concluded therefore that AS 12.25.150(b) was not violated. *Zsupnik v. State*, 772 P.2d 1098, 1099 (Alaska App. 1989). I agree with the balance struck by the court of appeals and take issue only with the fact that the court of appeals engaged in balancing in deciding whether the statute was violated rather than at the next step in the analysis where the question is what remedy shall be imposed.

The importance of the right to counsel aspect of *Copelin* should not be underestimated. In the context of tactical defense decisions which must be made in response to in-custody investigatory procedures, the United States Supreme Court has stated that "[t]he 'guiding hand of counsel' [is] essential." *Escobedo v. Illinois*, 378 U.S. 478, 486, 84 S.Ct. 1758, 1762, 12 L.Ed.2d 977 (1964). Our decision in *Copelin* cites *Escobedo* and quotes at length from the Minnesota Supreme Court case of *Prideaux v. State Department of Public Safety*, 310 Minn. 405, 247 N.W.2d 385 (1976), to further explain the importance of counsel when making "complicated decision[s]" immediately after arrest. Since the assistance of non-attorneys is not of similar importance, there is not as much to be gained by imposing the exclusionary rule in this context.

Moreover, extension of the rule announced in *Copelin* to the non-attorney context could be very costly in terms of added loss in law enforcement. *Copelin* only slightly extended protections that defendants previously had as a result of the

United States Supreme Court's decision in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). In *Edwards*, the court held that under the federal constitution, custodial interrogation of the defendant must cease when the defendant expresses a desire to contact counsel. *Id.* at 484–85, 101 S.Ct. at 1884–85. Therefore, under *Edwards*, denial of the defendant's request for contact with counsel results in exclusion of subsequent statements obtained by further police interrogation. *Id.* at 485, 101 S.Ct. at 1885.

The exclusionary rule adopted in *Copelin* merely requires exclusion of other types of evidence, such as breath tests, when the defendant's request for counsel is denied. Our decision in *Copelin* should not be understood as taking the novel, and potentially drastic, step of requiring exclusion when the defendant is denied contact with a non-attorney.[3] In this regard, it is important to note that AS 12.25.150(b) applies to all crimes, not simply misdemeanor DWI prosecutions. Thus, today's decision risks the exclusion of reliable evidence of heinous crimes in situations where there has been no serious interference with the defendant's ability to prepare her defense.

In conclusion, I distinguish this case from *Copelin* because the benefits to be gained from an exclusionary rule in this type of case are of less weight, and the risks in terms of added loss in law enforcement effectiveness are much greater. For these reasons I would affirm the decision of the court of appeals.

**2.** For example, a call to a layperson to obtain bail may indirectly assist a defendant in presenting her defense. However, a non-attorney is typically incapable of soundly advising the defendant on immediate matters which may prove to be critical defense decisions; whether to submit to a breath test or obtain alternative tests, whether to submit to police interrogation, and so forth.

**3.** I think that today's opinion mistakenly attributes significance to the state's concession that

Zsupnik subjectively intended to contact counsel through her uncle. Absent an objectively manifested request for contact with counsel, application of the exclusionary rule is not warranted. *Cf. Edwards*, 451 U.S. at 484, 101 S.Ct. at 1884–85 (custodial interrogation may continue, and defendant's responses are admissible at a later trial, unless and until the defendant *"expresse[s] his desire to deal with the police only through counsel"* (emphasis added)).