v.

**STATE of Alaska, Appellee.**

**No. A–3529.**

Court of Appeals of Alaska.

April 12, 1991.

Suzanne Weller, Asst. Public Defender and John B. Salemi, Public Defender, Anchorage, for appellant.

Cynthia M. Hora, Office of Sp. Prosecutions and Appeals, Anchorage and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS, J., and ANDREWS, Superior Court Judge.*

OPINION

BRYNER, Chief Judge.

Sixteen-year-old J.R.N. was arrested and charged as a juvenile delinquent for conduct amounting to first-degree murder and related offenses. The state petitioned for waiver of children's court jurisdiction, seeking to have J.R.N. tried as an adult. Following a hearing, Superior Court Judge

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

Peter A. Michalski issued a waiver order, finding that J.R.N. was not amenable to treatment as a juvenile. J.R.N. appeals, contending, in relevant part, that the court erred in failing to suppress a confession obtained in violation of Alaska Delinquency Rule 7(b); the rule requires the police to "immediately notify the parents" of a juvenile's arrest. We reverse.

There is no dispute as to the relevant facts. At about 8:45 a.m. on October 6, 1989, Anchorage police officers arrested J.R.N. and three juvenile companions in connection with a homicide that occurred the prior day. They took the four juveniles directly to the police station for questioning. At the station, the police held J.R.N. in an interview room for approximately four hours while they questioned J.R.N.'s companions.

During this four-hour period, the police made no effort to notify J.R.N.'s parents of the arrest. However, police sergeant Michael A. Grimes did consult with an assistant district attorney to determine the proper procedure for interrogating juveniles. Grimes was advised that juveniles must be asked if they want a parent notified or present but that parents need not be notified in the absence of a request by the juvenile.

At approximately 1:00 p.m., Grimes began his interrogation of J.R.N. He asked if J.R.N. wanted his parents notified; J.R.N. said that he did not. Grimes advised J.R.N. of his rights and, after securing a waiver, questioned him. J.R.N. eventually admitted the homicide. At about 2:15 p.m., after completion of the interrogation, J.R.N. agreed to assist the police in locating the murder weapon. He accompanied the police to the area where he had abandoned the gun, returning to the station at approximately 3:40 p.m.

The police first asked J.R.N. for his parents' names and telephone numbers at about 2:20 p.m.—after completing his interrogation but before leaving the station in search of the murder weapon. They made no attempt to contact either parent, however, until 4:00 p.m., after J.R.N. had returned to the station. At that time, the police reached J.R.N.'s father, M.N., by telephone. M.N. came immediately to the station to speak with J.R.N. M.N. had been available all day and would have come to the station earlier had he been notified of J.R.N.'s arrest.

Prior to his waiver hearing, J.R.N. moved to suppress his confession, arguing, among other things, that, pursuant to Alaska Delinquency Rule 7(b), the police should have notified his parents before subjecting him to interrogation.[1] The superior court denied J.R.N.'s motion. At the ensuing waiver hearing, the state relied on J.R.N.'s statements and evidence derived therefrom. On appeal from the superior court's waiver order, J.R.N. renews the argument that his confession was obtained in violation of Delinquency Rule 7(b).

At the time of J.R.N.'s arrest, Alaska Delinquency Rule 7(b) provided:

1. The state contends that J.R.N. did not raise this issue below and is consequently precluded from arguing it on appeal. The record does not support the state's contention. Although the state is correct in pointing out that J.R.N.'s written motion to suppress only challenged the general voluntariness of his confession, J.R.N.'s counsel expressly raised the Delinquency Rule violation as a ground for suppression during oral argument before the superior court on the suppression motion:

> Before I go into that specific area [the general voluntariness of J.R.N.'s confession] I would like to address one issue that came up in Sergeant Grimes' testimony. And that is he had testified—and we weren't aware of this— that [the assistant district attorney] had given him legal advice about whether the parents had to be present and about notifying the

parents. Certainly it isn't Sergeant Grimes' fault but we feel that that was not correct advice. There's a delinquency rule, Rule 7(b) of the Delinquency Rules which were in effect at that time which says that after a juvenile is arrested the arresting officer shall immediately notify the parents, guardian, custodian. You know in accordance with the Juvenile Rules the parents should have been notified. He was kept for quite a long period of time without the notification. And I think that was on the advice [of] the Department of Law that, well, he should be given the opportunity if he is questioned or the option, I think that Sergeant Grimes' words, if he was questioned. So we don't think that the rule was followed here and that certainly bears on the decision of the court. I think even perhaps as an independent ground.

(b) **Detention, Placement, Notification.**

If a juvenile is arrested, the juvenile must be taken immediately to a detention facility or placement facility designated by the Department or released pursuant to paragraph (c) of this rule. The arresting officer shall immediately notify the parents, guardian and Department of the arrest and detention or placement, and shall make and retain a written record of the notification. If the juvenile is arrested under subparagraph (a)(3) of this rule, prompt notification must also be given to the Department of Law.

The express language of this provision commands "the arresting officer" to "immediately notify the parents" of their child's arrest. This language is obligatory, leaving little to the arresting officer's discretion or the arrested juvenile's preference.

■ Interpreting identical language in an analogous rule, the Alaska Supreme Court has recently said, " 'Immediately' means just that." *Copelin v. State*, 659 P.2d 1206, 1211 (Alaska 1983), *accord Zsupnik v. State*, 789 P.2d 357, 359 (Alaska 1990). As the state has correctly conceded, J.R.N. was certainly under arrest when he was placed in custody and taken to the police station for questioning at 8:45 in the morning. *See Zsupnik*, 789 P.2d at 362. Under the plain language of Delinquency Rule 7(b), the duty to notify J.R.N.'s parents of the arrest arose at that time. J.R.N. nevertheless spent approximately five and one-half hours in custody before the police even asked for his parents' telephone numbers. Another hour and forty-five minutes elapsed before the police actually contacted J.R.N.'s father.

During four of the seven-plus hours that elapsed between arrest and parental notice, J.R.N. was simply held in custody, awaiting interrogation. Thereafter, he was subjected to custodial interrogation, taken on a search for the murder weapon, and returned to the station. Only when the police had secured all of the information that they desired from J.R.N. did they attempt to notify his parents of the arrest. Under these circumstances, the police conduct in J.R.N.'s case clearly violated the plain language of Delinquency Rule 7(b).

■ Of course, the plain language of a rule or statute does not invariably determine its meaning. Where, as here, the plain language of a rule is clear and unambiguous, however, the party asserting a different meaning "bears a correspondingly heavy burden of demonstrating contrary legislative intent." *Ward v. State*, 758 P.2d 87, 90 n. 5 (Alaska 1988) (quoted in *Zsupnik*, 789 P.2d at 359). Here, the state makes no showing of a legislative intent contrary to the plain meaning of Delinquency Rule 7(b).

Citing no particular authority, the state asserts that the sole purpose of the rule's immediate parental notice requirement is to let parents know where their children are. However, the courts of other jurisdictions, construing provisions similar to Delinquency Rule 7(b), have made it clear that a fundamental purpose of immediate parental notice requirements is to maximize the opportunity for parental presence during custodial interrogation of juveniles. *See, e.g., Ball v. Ricketts*, 779 F.2d 578, 581 (10th Cir.1985); *Holloway v. Wainwright*, 451 F.2d 149, 151 (5th Cir.1971); *People v. Maynes*, 193 Colo. 111, 562 P.2d 756, 758 (1977). These decisions lend strong weight to the appropriateness of interpreting Delinquency Rule 7(b) in accordance with its plain meaning.

In keeping with such decisions, the Alaska Supreme Court has noted that parental presence during custodial interrogation of an arrested child can play a significant role in protecting the child's legal rights and in assuring that the child makes informed and intelligent decisions; the court has specifically commented that "it is unquestionably a better practice to see to it that a juvenile consults with an adult before he waives his *Miranda* rights...." *Quick v. State*, 599 P.2d 712, 719 (Alaska 1979). It hardly seems reasonable to assume, as does the state, that furtherance of this policy was not one of the concerns that led the supreme court to adopt Delinquency Rule 7.

The importance of immediacy is also underscored by recent amendments to Delinquency Rule 7(b). As it existed when J.R.N. was arrested, Delinquency Rule 7(b) required immediate notice of arrest to the juvenile's parents and the Department of Health and Social Services. Effective January 15, 1991, the rule was modified to require notice to the court as well as to the parents and the Department. In amending the rule, the supreme court relaxed the immediacy requirement somewhat with regard to notification of both the Department and the court; the amended rule requires the arresting officer to "notify the court and Department immediately, *if possible, and in no event more than twelve hours later.*" (Emphasis added.) In contrast to the added flexibility for notice to the court and the Department, however, the amended rule leaves intact the original, unqualified requirement that "[t]he arresting officer shall immediately notify the parents or guardian of the arrest...."[2]

Despite the lack of legislative history indicating that Delinquency Rule 7(b) means anything other than its plain language suggests, the state argues that literal application of the immediate parental notice requirement would be disruptive and might interfere with the ability of the police to perform their investigative duties. According to the state, it is not unreasonable for the police to question a juvenile suspect immediately upon arrest and to defer parental notice until questioning has been completed. The state's position, however, runs directly counter to one of the apparent objectives of Delinquency Rule 7(b), which, as we have noted, is to maximize the opportunity for parental presence and participation before an arrested juvenile is subjected to custodial interrogation.

It is further highly significant that the state unsuccessfully relied on virtually the same argument in attempting to convince the Alaska Supreme Court, in the context of drunken driving prosecutions, that an arrestee should not be given an opportunity to contact counsel or friends before submitting to a post-arrest breath test, even though AS 12.25.150 expressly requires such an opportunity to be given "immediately after an arrest...." *See Zsupnik,* 789 P.2d at 359–60; *Copelin,* 659 P.2d at 1212–14. Just as the supreme court rejected the state's argument in drunken driving cases, so it must be rejected here.

The record in this case reveals no conflict whatsoever between the investigative needs of the police and the immediate parental notice requirement of Delinquency Rule 7(b). To the contrary, abundant time was available to notify J.R.N.'s parents of their son's arrest. In fact, prior to J.R.N.'s custodial interrogation, the police had ample time to contact the district attorney's office to determine the proper procedure for questioning J.R.N. It appears that, had they been advised to contact J.R.N.'s parents, they would have done so. Under the circumstances, the only apparent reason for J.R.N.'s arresting officers to delay efforts to notify his parents was their preference for interrogation without parental intervention.

■ Nor is it possible in this case to find substantial compliance with Delinquency Rule 7(b) by virtue of the fact that the police asked J.R.N. if he wanted to have his parents notified of his arrest. Regardless of an arrested juvenile's wishes, parents have a significant personal interest in securing for their child the full measure of protection afforded under law. Furthermore, because the immediate parental notice requirement is founded on the assumption that an arrested juvenile may find it difficult to make informed, intelligent choices and may benefit from mature pa-

---

2. Delinquency Rule 7(b), as amended, provides:
(b) **Detention, Placement, Notification.**
If a juvenile is arrested, the juvenile must be taken immediately to a detention facility or placement facility designated by the Department or released pursuant to paragraph (c) of this rule. The arresting officer shall immediately notify the parents or guardian of the arrest and detention or placement and shall notify the court and Department immediately, if possible, and in no event more than 12 hours later. The arresting officer shall make and retain a written record of the notification. If the juvenile is arrested under subparagraph (a)(3) of this rule, prompt notification must also be given to the Department of Law.

rental guidance, it would be paradoxical to leave the threshold choice as to parental notice in the juvenile's hands. Delinquency Rule 7(b) requires immediate parental notice regardless of the wishes of the child. Violation of the requirement is neither excused nor mitigated by the child's expressed desire not to have parental notice given.

We therefore conclude that J.R. N.'s confession was obtained in violation of Delinquency Rule 7(b). In reaching this conclusion, we do not suggest that immediate parental notice is an absolute requirement. The requirement must instead be applied reasonably and with sufficient flexibility to accommodate the legitimate police interest in prompt and thorough criminal investigation. *See, e.g., Copelin*, 659 P.2d at 1211–12 (recognizing that a drunken driving arrestee's right to contact counsel before submitting to a breath test is not absolute). Nor do we suggest that Delinquency Rule 7(b) always precludes custodial interrogation of an arrested juvenile without parental notice, for we recognize that in some situations parents or guardians will not be immediately available, and arresting officers may have a compelling need to question an arrested juvenile without delay. We hold only that an officer who arrests [3] a juvenile must make a reasonable effort to notify the child's parents as soon as practicable.

Having found a violation of Delinquency Rule 7(b), we must separately consider whether that violation justifies the suppression of evidence. Resolution of this question requires a careful balancing of society's interest in deterring future similar violations and its countervailing interest in the prevention of crimes and the apprehension of criminals. *See State v. Sears*, 553 P.2d 907, 912 (Alaska 1976).

In the present case, suppression of evidence would be likely to have strong deterrent effect. The situation in this case "involves a relatively static factual circumstance where the object of police efforts is

to obtain evidence of criminal conduct." *State v. Sundberg*, 611 P.2d 44 at 52 (Alaska 1980). *See also Copelin*, 659 P.2d at 1214. This is not a situation akin to the hot pursuit of a fleeing felon, in which split-second decisionmaking by an officer would not likely be affected by the threat of suppression. *State v. Sundberg*, 611 P.2d 44, 52 (Alaska 1980).

Furthermore, the parental notice requirement, while not in itself constitutionally compelled, is integrally related to the constitutionally-based interest in assuring the voluntariness of confessions. Scrupulous compliance with Delinquency Rule 7(b) will have the effect of assuring that juveniles who have been arrested are accorded fundamental fairness. As a corollary benefit, adherence to the requirements of Delinquency Rule 7(b) will also "conserve judicial resources which would otherwise be expended in making difficult determinations of voluntariness...." *Minnick v. Mississippi*, —— U.S. ——, 111 S.Ct. 486, 489, 112 L.Ed.2d 489 (1990).

Finally, unlike other situations, there appears to be no alternative to suppression of evidence available to assure compliance with Delinquency Rule 7(b). *See, e.g., Zsupnik*, 789 P.2d at 361 n. 5 (citing AS 12.25.150(c), which provides criminal penalties against officers who violate a prisoner's rights). The state has cited no statute or rule under which other sanctions could be imposed for violations of Delinquency Rule 7(b). Without suppression as a remedy for violations, officers would have little incentive to comply with the rule.

On balance, these considerations weigh heavily in favor of suppression as the appropriate remedy for a violation of Delinquency Rule 7(b). This balance is not altered in the present case by the fact that the police acted in good faith, based on advice received from the district attorney's office. While Grimes' decision to obtain and follow the advice of the district attorney's office is unquestionably commendable, the duty to comply with the law is not

---

**3.** By "arrest", we refer to the definition set out in AS 12.25.160: "Arrest is the taking of a person into custody in order that the person may

be held to answer for the commission of a crime." *See Zsupnik*, 789 P.2d at 362.

restricted to the police, but extends to other state officials as well. *See, e.g., Lowry v. State*, 707 P.2d 280, 286 (Alaska App. 1985) (constitutional constraints apply to private security guard acting as a state agent). Here, the prosecutor who was consulted by Grimes shared the responsibility for compliance with Delinquency Rule 7(b). It would be ironic indeed to punish with suppression the mistakes of police officers while excusing those of prosecutors who advise them.

 We thus hold that suppression of evidence is the appropriate remedy for a violation of Delinquency Rule 7(b) and that the superior court erred in denying J.R.N.'s motion to suppress. Although we recognize that substantial independent evidence was presented by the state in support of waiver, we are unable to conclude that the improperly obtained evidence did not appreciably affect the superior court's decision to waive juvenile jurisdiction. *Love v. State*, 457 P.2d 622, 634 (Alaska 1969).

The order waiving juvenile jurisdiction is accordingly REVERSED. This case is REMANDED for further proceedings in conformity herewith.[4]

MANNHEIMER, J., not participating.

---

4. In light of our decision reversing the superior court's order waiving juvenile jurisdiction, we need not decide the other issues raised by J.R.N.

