**J.R.N., A Minor, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–5274.**

Court of Appeals of Alaska.

Nov. 10, 1994.

**176**

Suzanne Weller, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellant.

Eric A. Johnson, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS, J., and ANDREWS, Superior Court Judge.*

*OPINION*

BRYNER, Chief Judge.

Sixteen-year-old J.R.N. was arrested and charged as a juvenile delinquent for conduct amounting to first-degree murder and other related offenses. Following a hearing, the superior court issued an order waiving juvenile jurisdiction over J.R.N. This court re-

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. The state maintains that a more deferential standard of review should be applied in this case because the case does not involve a constitutionally established right. However, in our view, the

---

versed the superior court's waiver order, finding that the order was based in part on a confession obtained from J.R.N. in violation of his right to immediate parental notice of arrest, as provided for in Alaska Delinquency Rule 7(b). *J.R.N. v. State*, 809 P.2d 416 (Alaska App.1991). In that decision, we reasoned that the right to parental notice could not be waived by J.R.N. alone. *Id.* at 419–20.

The Alaska Supreme Court reversed this court's decision, concluding that a juvenile may waive the right to parental notice, provided that the waiver is knowing and voluntary under the totality of the circumstances. *State v. J.R.N.*, 861 P.2d 578, 580–81 (Alaska 1993). The supreme court remanded J.R.N.'s case to the superior court to determine whether J.R.N. had waived the right. *Id.* at 581. On remand, Superior Court Judge Peter A. Michalski concluded that J.R.N. had knowingly and voluntarily waived his right to parental notice. J.R.N. appeals this determination.

In an appeal from a determination of voluntariness, we must accept the trial court's factual findings unless they are clearly erroneous; we independently decide the ultimate issue of voluntariness. *State v. Ridgely*, 732 P.2d 550, 554 (Alaska 1987).[1]

Our review of the record convinces us that the superior court's factual findings on remand, a copy of which we attach hereto and incorporate herein, are not clearly erroneous. Accepting these facts, we independently conclude that the superior court did not err in finding that J.R.N. knowingly and voluntarily waived his right to immediate parental notice.

J.R.N.'s primary contention on appeal is that he could not have waived a right of which he was unaware. He claims that, because the police did not formally and explicitly advise him of his right to have his parents immediately notified of his arrest, or of the further right to consult with them and to have them present during any interroga-

appropriateness of the traditional standard of review of a voluntariness decision inheres more in the uniqueness and complexity of the determination than in the fundamentality of the right at issue in a particular case. *See, e.g., Johnson v. State*, 631 P.2d 508, 510–13 (Alaska App.1981).

tion—a subsidiary right that J.R.N. maintains is encompassed within the right to immediate notification (an issue we need not address)—he could not properly be found to have knowingly waived the right to immediate notice. Virtually all of the cases J.R.N. relies on, however, involve *Miranda*[2] warnings and are therefore inapposite.

The giving of express, formalized explanations of rights has generally been required as a precondition of a valid waiver only in situations directly involving the *Miranda* rule or in cases dealing with the unique constellation of fundamental rights that are necessary to assure the integrity of a trial. *Compare, e.g., Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), *with Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *see also* 3 Wayne R. LaFave, *Search and Seizure* § 8.1(a), at 149–52 (2d ed. 1987). In contexts other than these, there is no general rule that the voluntary relinquishment of a right, even a constitutional right, must be preceded by a specific explanation or warning of its existence. For example, fourth amendment waivers by individuals who have not been apprised of the right to refuse a warrantless search are commonly upheld when they appear to be voluntary under the totality of the circumstances. *See, e.g., Frink v. State,* 597 P.2d 154, 169 (Alaska 1979) (individual need not be informed of right to refuse search before validly waiving fourth amendment rights in noncustodial situation); *Gray v. State,* 596 P.2d 1154, 1155 & 1158 n. 18 (Alaska 1979) (individual need not be informed of right to refuse search before validly waiving fourth amendment rights in custodial situation where *Miranda* warnings are given). Likewise, in situations involving noncustodial police interrogation (where *Miranda* warnings need not be given), the voluntariness of a confession has

never been conditioned on the suspect being advised of the right to remain silent. *See, e.g., Macauly v. State,* 734 P.2d 1020, 1023–25 (Alaska App.1987).

The right to immediate parental notice is one set out by rule and is not a fundamental constitutional right designed to protect the integrity of trial. J.R.N. was expressly asked if he wanted the police to call his parents; the superior court properly found that the circumstances surrounding this request were such that J.R.N. could reasonably infer that he would have been allowed to consult with his parents and to have them present prior to any interrogation. J.R.N. nevertheless immediately declined. Given the totality of the circumstances, as more fully described in the trial court's findings, we conclude that J.R.N. voluntarily and knowingly waived his right to parental notice.[3]

The superior court's order waiving juvenile jurisdiction over J.R.N. is AFFIRMED.

MANNHEIMER, J., not participating.

## ATTACHMENT

### IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

### THIRD JUDICIAL DISTRICT AT ANCHORAGE

State of Alaska, Respondent,

vs.

J.R.N., Respondent.

Case No. 3AN–89–505 CP

Filed March 4, 1994

*FINDINGS AND ORDER ON REMAND*

The issue before this court is whether or not the minor in this case, J.R.N., knowingly,

---

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** J.R.N. additionally complains that his waiver was vitiated by the failure of the police to offer to call his parents immediately after his arrest. However, because J.R.N. made no statements during the delay between his arrest and interrogation, any violation of the right to immediate notice resulting from the delay was inconsequential except as a factor bearing on the overall issue of voluntariness. The superior court's findings

expressly address the issue of delay as an aspect of the totality of the circumstances bearing on the voluntariness of J.R.N.'s waiver. *See* Findings and Order on Remand, paragraph no. 2.

J.R.N. further attempts to argue that his confession must be suppressed because it was the fruit of police interrogation that occurred before he declined to have his parents called. As correctly found by the superior court on remand, however, no pre-waiver interrogation occurred. *See* Findings and Order on Remand, paragraph no. 3.

intelligently and voluntarily waived his right to parental notification after he was arrested. This court has reviewed the testimony of Sgt. Michael Grimes and the minor taken on February 22, 1990. This court has also heard the testimony of Sgt. Grimes given on February 25, 1994. This court has also reviewed the video tape of the minor's statement to the police, including his waiver of rights, and the transcript that accompanies that statement. This court has also considered the stipulation of counsel filed on January 4, 1991. Based upon that evidence, upon the briefing submitted by the parties, and arguments of counsel, this court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. The minor was arrested by members of the Anchorage Police Department at approximately 8:40 a.m. on October 6, 1989. He was taken to the Anchorage Police Department. He was placed by himself in a room until offices could ask him questions.

2. At approximately 1:00 p.m. the minor was moved to an interview room where Sgt. Grimes began speaking with him. In the interim officers periodically checked on him to make sure he was alright, and asked if he needed to use the restroom, or if he wanted anything to drink. This was not a situation where he was kept isolated in a room somewhere and ignored. The reason for the delay was that Sgt. Grimes wanted to speak to several of the other juveniles who were with the minor when he was arrested, and who it appeared were only peripherally involved in the homicide the police were investigating. Once he obtained information from the other juveniles, Sgt. Grimes could then more intelligently interview the minor, form the necessary questions, and be able to determine when the minor was telling the truth or lying in his responses. The delay was not for purposes of wearing the minor down, or discouraging him from exercising his rights.

3. At the beginning of the video tape Sgt. Grimes made some preliminary comments. It is clear from the context that the purpose of these comments was to make sure that the minor knew the seriousness of the situation

that the juvenile was in, and that Sgt. Grimes knew the basic facts of the crime so the juvenile would not be able to fool him. Although Sgt. Grimes said "okay?" several times and the minor appeared to nod in the affirmative, this again was Sgt. Grimes's method of making sure the minor understood. This was not part of the interrogation itself.

4. Sgt. Grimes then told the minor that he wanted to talk to the minor about his involvement in the murder and then said:

Before we do, I wanna give you an opportunity—you're only 16 ... uh would you like us to call your parents? Huh? No? Okay ... All right.

Although there is no verbal response the video reflects that the minor shakes his head in the negative in response to Sgt. Grimes's questions.

5. Sgt. Grimes's tone was soft-spoken and his manner was polite. He was not overbearing or threatening. Sgt. Grimes was not in uniform and displayed no weapons.

6. Sgt. Grimes recognized that the minor was underage, and therefore had a right to have his parents called and be present. Sgt. Grimes in fact pointed out to the minor that he was under age.

7. The minor had two prior experiences with the authorities. In one case he was stopped and held by a Sears security guard for shoplifting until his parents arrived. From that experience the minor knew that his parents could be called, in fact they were called, and they later arrived at the store.

8. Given the manner and context of the question put to him by Sgt. Grimes, and his prior experience, the minor knew that his parents would have been called if he had wanted them to be called. From the context it is J.R.N. who is being "given the opportunity" to call his parents, from which J.R.N. also knew that he would have been able to talk to them. Finally, it is "Before we do ... [talk about the problem]" that the opportunity to call his parents is given, thus he knew that the officers would wait for him to talk to them. Since he did not even want to talk to them, whether the officers would wait further for them to arrive at the station is irrelevant,

though that is the logical inference to be drawn from the deference Sgt. Grimes was showing him.

9. The minor knew that he was there on a serious matter (a homicide investigation). Yet when asked if he wanted his parents called, he unhesitatingly and unequivocally indicated he did not want them contacted.

10. After the minor indicated he did not want his parents called, Sgt. Grimes proceeded to advise him of his *Miranda* rights. At a previous hearing this court concluded that the minor knowingly and voluntarily waived those rights, and gave a statement to the police.

## CONCLUSIONS OF LAW

1. After a minor is arrested he or she has the right to have parents immediately notified. This right is not a constitutional right. It is a right created by statute and rule. AS 47.10.140(b) and DR 7(b).

2. Given the totality of the circumstances, this court concludes that the State has met its burden of proof by a preponderance of the evidence, and this court finds that the minor knowingly, intelligently, and voluntarily waived his right to immediate parental notification.

3. This court took into consideration the age of the minor at the time, pursuant to *Quick v. State*, 599 P.2d 712 (Alaska 1979) and *S.B. v. State*, 614 P.2d 786 (Alaska 1980). This court finds that given the circumstances in this case, and the minor's prior experiences, he made a knowing, intelligent and voluntary waiver of his right to immediate parental notification.

4. Finally, this court finds that the delay between the arrest and asking the minor if he wanted his parents called did not affect the minor's knowing, intelligent and voluntary waiver of his right to immediate parental notification.

This case is returned to the retained jurisdiction of the Supreme Court of the State of Alaska.

/s/ Peter A. Michalski
PETER A. MICHALSKI
SUPERIOR COURT JUDGE