976 P.2d 241 (1999)
Lareene BURRECE, Appellant,
v.
STATE of Alaska, Appellee.
No. A-6688.
Court of Appeals of Alaska.
February 5, 1999.
Eugene B. Cyrus, Eagle River, for Appellant.
Kenneth M. Rosenstein, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.
Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

OPINION
STEWART, Judge.
Lareene Burrece pleaded no contest to one count of fourth-degree misconduct involving a controlled substance.[1] She preserved her right to appeal the order denying her unsuccessful attack on the search warrant for her *242 property in Big Lake.[2] Burrece claims that the tip supporting the warrant was stale, that evidence of electric consumption could not corroborate that tip, and that the district court's reliance on a trooper's telephonic testimony that supplemented his affidavit was impermissible. We conclude that all of those claims fail and affirm her conviction.

Facts and proceedings
According to the affidavit filed in support of the search warrant application for Burrece's property, Alaska State Trooper Timothy L. Bleicher interviewed Troy Heaven on August 4, 1995, regarding his possession of marijuana. In that interview, Heaven told Bleicher that he stole the marijuana when he and two juveniles burglarized the Big Lake Laundry Mat. Heaven also told Bleicher that he knew of another place where marijuana was grown. That place was located on Tract D, Echo Hills Subdivision, located at about .5 mile Echo Lake Drive. Heaven knew of the place because a friend of his had lived there.
In the interview, Heaven told Bleicher that his friend had been asked to leave by the owner of the property. Heaven said he drove out to the property about four months before the interview and found his friend removing a large bag of marijuana from a white trailer located on the property. Heaven reported that his friend told him that there were about twelve marijuana plants inside the trailer.
Bleicher went to the property and observed several structures including a white trailer with "boarded up and covered" windows. Bleicher learned that Mike and Lareene Burrece were the owners of the property that Heaven identified.
Bleicher asked John Bogue, the Matanuska Electric Association's Energy Service Manager, about the electricity consumption for that property. He was told by Bogue that there were two accounts on the property, both in the names of Mike and Lareene Burrece. Bogue told him that the electrical consumption was suspicious and consistent with a marijuana grow because the pattern of consumption was inconsistent with the normal increase in the winter months and the normal decrease in the summer months. Bogue did not provide any data on the kilowatts used on the property but did indicate that the unusual pattern had continued after Heaven's visit to the property.
On August 9, 1995, Bleicher executed an affidavit that included the information obtained from Heaven and from his investigation. He filed that affidavit in support of a request for a search warrant for Burrece's property. On August 10, 1995, District Court Judge Peter G. Ashman called from the Palmer court to the Trooper's office in Wasilla and asked Trooper Bleicher some questions about the investigation and his affidavit. Judge Ashman stated in part:
Trooper Bleicher is present at my request, by telephone today, I received a long affidavit for a search warrant in 3PA-95106SW and I . . . I'm basically prepared to grant the search warrant but I need to clarify a few points in the affidavit. [ ] I'm really basing my decision there's probable cause to search on matters contained in the affidavit, um and since that's been presented to me and sworn to, I believe that taking this additional telephonic testimony is [ ] I think there's ground to go forward in this fashion.
Judge Ashman asked Bleicher several questions and then announced, "I'm going to find that this is really not a proceeding on telephonic testimony but rather a telephonic ... an opportunity for the court to announce the basis of its decision and for the officer to take advisement telephonically." Judge Ashman granted the search warrant.
On August 14, 1995, the troopers served the search warrant and found eleven marijuana plants (two of them dead), "starter" marijuana plants, and over a pound of marijuana.
Burrece was indicted on three counts of fourth-degree misconduct involving a controlled substance. She moved to suppress the evidence that was seized pursuant to the warrant. Following a hearing, Superior Court Judge Beverly M. Cutler denied Burrece's *243 motion. Burrece entered a no contest plea to one of the counts, preserving the issues that she argues on appeal.

Discussion
First, Burrece argues that Heaven's tip was stale because it was four months old when given to Bleicher. Because the tip was four months old, she argues that there was no reasonable ground to believe there was evidence on the property when Bleicher applied for the warrant.
Before a search warrant can be issued, the issuing judge or magistrate must be satisfied that current information supports a finding that probable cause to search presently exists.[3] Whether the information presented to the court is fresh or stale is determined by a flexible test. That test considers the totality of the circumstances. One of those circumstances is the span of time that has passed from the acquisition of that information by the informer or the police officer and the presentation of that information to the court.[4] Other relevant circumstances include the type of crime involved and the character of the items sought.[5]
Probable cause to search requires sufficient information to permit the conclusion that the criminal activity, the contraband, or the evidence of the crime will be found at the place to be searched.[6] That conclusion does not have to reach an absolute certainty, but the State must provide "reasonable grounds" to justify the conclusion that the items searched for are at the premises to be searched.[7]
Bleicher's affidavit described the large amount of equipment commonly found in an operating grow, including high intensity lights, ballasts, tracks, timers, heaters, fans, pumps, and other equipment. Bleicher also noted that the electrical power for such an operation commonly is provided by the local utility and that windows in structures containing a grow are commonly covered to enhance the artificial-light cultivation. His affidavit also noted that the pattern of power consumption had not changed since Heaven had been at the property and that the trailer described by Heaven had boarded-up windows. All of this indicates that the site of marijuana cultivation is not likely to move in the four-month period between Heaven's visit to Burrece's property and the application for the search warrant.
Considering the totality of the circumstances in this case, we conclude that Judge Ashman could properly find that the information before him provided reasonable grounds to believe that evidence of a marijuana grow would be found when he issued the warrant. Judge Ashman could reasonably rely on the large amount of equipment that can be required for the cultivation of marijuana, the ongoing character of plant cultivation, coupled with the specific information in Bleicher's affidavit about Burrece's property to conclude that there would be evidence of a marijuana grow on Burrece's property. The specific information included the report of the unchanging pattern of electrical consumption (which provided an additional basis to infer that the cultivation was ongoing and to conclude that Heaven's tip was not stale) and Heaven's report to Bleicher about the marijuana. Thus, we reject Burrece's contention that the warrant was invalid because Heaven's tip was stale.
Burrece argues that Judge Ashman could not rely on the evidence of electrical consumption when granting this warrant. But as we noted above, the evidence of the pattern of electrical usage that was provided in the warrant permitted an inference that there was no significant change in the activity on the property since Heaven visited. We conclude that the district court could rely on the description of Burrece's pattern of electrical consumption to infer that Heaven's tip described an ongoing operation.
*244 Finally, Burrece relies on AS 12.35.015(a)[8] to attack the district court's use of Trooper Bleicher's telephonic testimony in support of the warrant. Burrece argues that the exclusionary rule should be applied to suppress any evidence obtained pursuant to the warrant because Judge Ashman did not follow the procedure established in that statute. For purposes of resolving this issue, we assume that the statute applies to this case.
While Judge Ashman did not make the findings required by AS 12.35.015(a), Burrece has neither shown nor argued any bad faith on the part of the court or the trooper.[9] Burrece argues that a violation of the statute by Judge Ashman is sufficient to suppress the evidence obtained pursuant to the warrant. But she does not argue that any of Bleicher's testimony was a critical or indispensable component of Judge Ashman's probable cause finding.
In several decisions, our appellate courts have faced the question whether the government's violation of a statute should result in the suppression of evidence.[10] An analysis of those decisions shows that the exclusionary rule embodied in Alaska Rule of Evidence 412 has not been applied when the statute that has been violated is wholly unrelated to a defendant's constitutional rights.[11] Furthermore, in Sundberg, a factor in the supreme court's analysis was the absence of a legislative directive to apply the exclusionary rule to the violation of the statute at issue. "[W]e note that there is no legislative directive calling for invocation of an exclusionary rule as a sanction...."[12] In the statute in question here, the legislature issued a directive that the exclusionary rule should not apply in the absence of bad faith. And the statute here does not implement or enforce a defendant's constitutional right, but regulates the process of search warrant applications.
Burrece has not claimed that the purported violation of the statute was in bad faith. Furthermore, she has not claimed that absent Bleicher's testimony, the warrant would be invalid. We conclude that the exclusionary rule should not apply.

Conclusion
The judgment of the superior court is AFFIRMED.
COATS, Chief Judge, concurring.
I write separately because I am concerned that the court's decision might be read as more critical of Judge Ashman's actions than it should be. In my view, it is highly questionable whether Judge Ashman acted in violation of AS 12.35.015(a) when he took supplemental telephonic testimony from Trooper Bleicher. As Judge Mannheimer concedes, there was nothing improper in Judge Ashman's action in having Trooper Bleicher provide supplemental information to strengthen the state's showing of established probable cause.[1] This appears to me to be the action of a conscientious magistrate reviewing a search warrant.
*245 Since the information which Trooper Bleicher provided was not the original application for the search warrant but was supplemental, in my view there is a serious question whether AS 12.35.015 required Judge Ashman to find, in order to proceed telephonically, that "the delay might result in loss or destruction of the evidence subject to seizure."[2] Judge Stewart does not resolve this issue in his opinion. He concludes that even if there was a violation of the statute, Burrece has not made any claim which would warrant application of the exclusionary rule.
I agree with Judge Stewart's opinion. However, I would state the conclusion somewhat more strongly. I think it is an open question whether Judge Ashman violated AS 12.35.015(a) in taking the supplemental testimony. I believe Judge Ashman's conclusion that the statute did not prevent telephonic supplementation was reasonable. Under these circumstances, I conclude that it would be inappropriate to find that Judge Ashman acted in bad faith. I further conclude that it would not be appropriate to apply the exclusionary rule to this case.
MANNHEIMER, Judge, dissenting.
I agree with the majority's resolution of all issues except the last: Judge Ashman's decision to take telephonic testimony from Trooper Bleicher. The record shows that Judge Ashman knowingly violated AS 12.35.010(b) and AS 12.35.015(a).[1]
Judge Coats reasons that Judge Ashman did not violate these statutes since the trooper's telephonic testimony supplemented a prior written affidavit. But neither AS 12.35.010(b) nor AS 12.35.015(a) draws any distinction between an officer's initial testimony and any later testimony the officer may give to bolster the search warrant application.
Judge Stewart concludes that even if Judge Ashman violated these statutes, the violation should be ignored. For the reasons explained here, I do not agree.
The facts of this case are straightforward. Trooper Bleicher initially applied for the search warrant by affidavit. After Judge Ashman read this affidavit, he contacted Bleicher and asked the trooper to give supplemental telephonic testimony:
THE COURT: Trooper Bleicher is present, at my request, by telephone today. I received a long affidavit for a search warrant in [case number] 3PA-95-106 SW, and II'm basically prepared to grant the search warrant, but I need to clarify a few points in the affidavit. Trooper Bleicher ... is [currently] located across the Valley in Wasilla, is that right?
BLEICHER: That is correct.
THE COURT: All right. And you're thirty minutes or so away from the courthouse?
BLEICHER: At least. Yes.
THE COURT: And it's now 5:10 in the afternoon. Given that the matters [I wish to inquire into] are simply ones of ... brief clarification, and [given] that Trooper Bleicher has testified personally in front of me literally hundreds of times, I believe that it's appropriate to [take] brief supplemental telephonic testimony as part of the search warrant [application]. It's not an [indiscernible] circumstance, and I don't believe that it would cause the loss or destruction of evidence. And if the State feels that it would be more appropriate to set this [hearing] for a time when the trooper could be present personally, I'd be happy to accommodate the trooper. Trooper Bleicher, is it your preference to go forward like this today, or would you like an opportunity to come over [to the courthouse in Palmer]?
BLEICHER: I would like ... [to] proceed telephonically.
Under AS 12.35.015(a), a judicial officer has the authority to hear a search warrant application telephonically, but only "if the *246 judicial officer finds that there is probable cause to believe that ... [personal] presentation of the applicant's affidavit or testimony... would result in delay [that] might result in loss or destruction of the evidence subject to seizure". The problem in the present case is that Judge Ashman affirmatively found that the statutory requirement was not satisfied. That is, Judge Ashman affirmatively found that there was no reason to believe that delay might result in loss or destruction of any evidence.
The majority offers three reasons why Judge Ashman's violation of the statute does not matter.
First, the majority adopts Judge Ashman's rationale that the search warrant application was essentially complete, that Judge Ashman had already decided to issue the warrant, and that the judge only wanted the trooper to provide "brief clarification" of the matters stated in the affidavit. However, the record shows that Judge Ashman was not simply seeking clarification of Bleicher's affidavit. Instead, the judge was trying to supplement the record with fairly important information.
The search warrant application in this case was based primarily on hearsay information obtained from Troy Heaven, so the government had to establish Heaven's "basis of knowledge" and "credibility" under the Aguilar-Spinelli test.[2] Heaven gave the police a detailed account of discovering marijuana at Burrece's residence, thus satisfying the "basis of knowledge" prong of Aguilar-Spinelli. But the evidence supporting Heaven's credibility was thin. Heaven was a "police informant", and he had not provided information to the police in the past. Moreover, in his statements to the police, Heaven provided reason to suspect that he was motivated by revenge or ill-will toward Burrece. (Heaven had a friend who was wanted by the law. The friend had been staying at Burrece's residence; but when Burrece discovered that Heaven's friend was hiding from a warrant, Burrece threw the friend out.) Thus, independent corroboration of Heaven's story was crucial to the issuance of the warrant.
In his affidavit, Trooper Bleicher referred to the fact that another search warrant had already been issued for a laundry in Big Lake. This prior search warrant application was based on a tip provided by Troy Heaven, who was also the informant in Burrece's case. However, Bleicher's affidavit was unclear regarding what the police discovered when they served the warrant at the laundry. Bleicher's affidavit stated:
[The] investigators observed that the Big Lake laundry mat [sic] had been utilized as a marijuana grow operation with extensive damage done to the facility, as well as evidence of marijuana being grown in 3 separate rooms within that building. The marijuana grow operation appeared to have been an ongoing operation for an extended time period [,] such as a couple of years.
(Emphasis added) This description, combined with Bleicher's failure to assert that the troopers found any marijuana or other evidence of current or recent marijuana cultivation, makes it sound as if the troopers had found an abandoned marijuana cultivation site. This state of affairs would arguably be inconsistent with Heaven's assertion that he had recently burglarized the laundry and had found marijuana growing there.
As the following portion of the transcript shows, Judge Ashman knew that the troopers had found quantities of marijuana when they served that earlier warranta discovery which indicated that the site was only recently abandoned:
THE COURT: I reviewed the [trooper's current] affidavit, and I actually did the search warrant that's referred to, on . . . let's see . . .
BLEICHER: 8-4-95?
THE COURT: Yeah, I'm trying to find the page reference. Okay, the operation referred to on page 3 [of the current affidavit];... a Big Lake laundry was the *247 subject of [an earlier] search warrant, is that right?
BLEICHER: That's correct.
THE COURT: And ... as I read this affidavit, that [earlier] warrant was executed, and there were drugs found?
BLEICHER: That is correct, Your Honor.
. . .
THE COURT: And it was Troy Heaven who was one of the . . . informants in that [earlier] case? And the State is asking the court to . . . find that Heaven's credibility is corroborated by the fact that his information about the Big Lake laundry was verified by the search, is that right?
BLEICHER: That is correct.
In the above-quoted exchange, Judge Ashman indicates that all of this information about the earlier search was already contained in Bleicher's affidavit. But the judge's statement is not supported by the record. Bleicher's affidavit referred to the earlier search warrant issued for the laundry in Big Lake and the fact that Troy Heaven provided the tip about that laundry, but Bleicher's affidavit did not fully describe the results of that earlier search. From the record, it appears that Judge Ashman independently knew the results of that search because he was the judicial officer who issued the earlier warrant.
To me, this record indicates that Judge Ashman was not simply trying to "clarify" Bleicher's affidavit. Rather, Judge Ashman was attempting to make a recordattempting to supplement Bleicher's affidavit with material information that the judge already knew but that Bleicher had forgotten to mention. For this purpose, Judge Ashman asked Bleicher a series of leading questionsquestions that simply required Trooper Bleicher to confirm the judge's statements.
I am not suggesting that Judge Ashman acted improperly when he prompted Bleicher to provide supplemental information. Judicial officers often deal with testimony or affidavits that are imprecisely or inartfully worded, requiring the judge to elicit clarifying testimony or supplemental affidavits. Moreover, I do not believe that judges necessarily overstep their proper role when they ask police officers to confirm important facts that are already well-known but that somehow did not find their way into the officer's search warrant application. The problem here is that Judge Ashman was eliciting these important facts by telephone.
The fact that the earlier search of the laundry yielded positive evidence of a recently-abandoned marijuana cultivation site was not mere "clarification" of Bleicher's affidavit. This information was not contained in Bleicher's affidavit. Moreover, judging from the pains that Judge Ashman took to place this information on the record, the judge did not view this information as trivial. Rather, the record shows that Judge Ashman considered this information to be important when assessing the credibility of Troy Heaven's tip in Burrece's case.
For these reasons, I reject the idea that Bleicher's telephonic testimony was a mere "clarification" of his affidavit, and I further reject the majority's conclusion that Bleicher's telephonic testimony was of trivial importance.
Judge Coats concludes that, even if Bleicher's supplemental information was material to the ultimate finding of probable cause, Judge Ashman did not violate AS 12.35.010(b) and AS 12.35.015(a) when he elicited the trooper's supplemental testimony by telephone. Judge Coats notes that Trooper Bleicher had previously submitted an affidavit in support of the search warrant application; the trooper's telephonic testimony was a "supplement" to this affidavit. Judge Coats then suggests that the statutes apply only to the initial testimony in support of a search warrantthat they do not restrict telephonic testimony that "supplements" prior testimony.
The problem with this analysis is that the two statutes neither contain nor suggest any such distinction. By their terms, both AS 12.35.010(b) and AS 12.35.015(a) define the circumstances in which "[a] judicial officer may issue a search warrant upon ... sworn oral testimony ... communicated by telephone". The statutes do not distinguish between testimony that was part of the initial *248 search warrant application and testimony that was supplied later as a supplement to the application. If Judge Ashman relied upon Trooper Bleicher's telephonic testimony when he made his decision to issue the search warrant (and the record shows that he did), then Judge Ashman "issue[d] a search warrant upon ... sworn oral testimony... communicated by telephone", and the two statutes governed his conduct.
Moreover, Judge Coats's suggestion that AS 12.35.010(b) does not apply to "supplemental" testimony leads to unacceptable results. Applying this same logic to the other subsection of the statute, AS 12.35.010(a), one might conclude that the requirement of "oath or affirmation" applies only to the initial search warrant applicationthat supplemental statements in support of a search warrant need not be under oath. Such an interpretation, I assume, would be rejected out of hand. But just as I believe that AS 12.35.010(a) applies to any and all statements presented in support of a search warrant application, I likewise believe that its sibling provision, AS 12.35.010(b), applies to any and all statements presented in support of a search warrant application. I therefore conclude that AS 12.35.010(b) and AS 12.35.015(a) apply to all telephonic testimony in support of a search warranteven telephonic testimony that "supplements" an earlier search warrant application.
The majority offers a second reason for concluding that Judge Ashman's violation of the statute does not matter. A separate clause of AS 12.35.015subsection (f)declares that, "[a]bsent a finding of bad faith, evidence obtained under a warrant issued under this section is not subject to [suppression] on the ground that the circumstances did not support [the warrant's] issuance under (a) of this section." Translating subsection (f) into plain English, the legislature has declared that when a search warrant is issued on the basis of a telephonic application, the warrant will generally remain valid even if the defendant later shows that there was, in fact, no probable cause to believe that delay in issuing the warrant would result in loss or destruction of evidence. The only exception is for situations in which someone has acted in bad faith.
The majority asserts that "Burrece has neither shown nor argued any bad faith on the part of [Judge Ashman] or the trooper". I am not sure what the majority means by "bad faith". If, by "bad faith", the majority means "evil motive", the answer is that no evil motive is required.
As the transcript demonstrates, Judge Ashman knew that AS 12.35.015(a) authorized him to accept a telephonic search warrant application only under specific circumstances. The judge declared that these circumstances did not exist (and the trooper did not dispute the judge's statement). The judge then stated that he would take Bleicher's telephonic testimony anyway. No other sort of "bad faith" is required to establish a violation.
The majority offers a third reason why Judge Ashman's violation of the statute does not matter. According to the majority, Burrece's challenge to the warrant must be rejected because Burrece has failed to assert that, but for Bleicher's telephonic testimony, the search warrant would not have been issued. It is true that Burrece does not directly assert that Bleicher's telephonic testimony was material to Judge Ashman's decision to issue the warrant, but the record certainly suggests that this was the case.
As explained above, Bleicher's telephonic testimony was not merely a trivial clarification of his affidavit; rather, it materially supplemented the information in the affidavit. Moreover, Judge Ashman went to a great deal of effort to make sure that Bleicher's "clarification" was placed on the record. To me, this strongly implies that Judge Ashman was not willing to issue the warrant until Bleicher provided the supplemental testimony.
For these reasons, I can not join in the majority's decision to ignore Judge Ashman's violation of AS 12.35.015(a). I conclude that the statute was inexcusably violated, and I further conclude that the violation was important to the issuance of the search warrant.
*249 One might be tempted to ask what difference all of this makes. We live in an age of global wireless telephonic communication, an age of fax and of Internet e-mail. What purpose could be served by limiting a court's authority to accept telephonic search warrant applicationsespecially in a state like Alaska, where great distances have always hampered traditional forms of communication? I have two answers.
First, it is important that the guardians of the law take pains to observe the law. Whatever the arguments may be for unrestricted telephonic search warrants, the legislature has decreed that courts can accept telephonic search warrant applications only in limited circumstances. Trial judges and magistrates should not knowingly ignore these limitations, nor should this court turn a blind eye when the statute is violatedas I believe it was in this case.
The district court decided to take Bleicher's telephonic testimonyin fact, the court actively solicited Bleicher's telephonic testimonybecause it was the end of the business day (5:10 p.m.) and because Bleicher was some thirty minutes away by car. The court took Bleicher's testimony telephonically even though the court openly acknowledged that there was no reason to believe that a thirty-minute delay might result in loss or destruction of evidence. Inconvenience is not a valid reason to ignore the statute.
Second, the legislature's decision to limit telephonic search warrant applications is supported by important policy considerations. Clearly, the limitation on telephonic search warrant applications is not intended to ensure that officers apply in person for search warrants; if that had been the legislature's aim, they would have outlawed search warrant applications by affidavit. Instead, I conclude that telephonic testimony is disfavored because of the different way in which the oath is administered to the person(s) applying for the warrant.
In a normal search warrant application, the officer either signs an affidavit or testifies in court. In either case, the officer must personally appear before an official (either a notary or a judge) and, in that official's presence, the officer must swear or affirm that they are telling the truth. When an oath is administered by telephone, on the other hand, there is no formal moment when the officer must stand before a public official, face to face, and formally swear or affirm that they are telling the truth.
Bowing to practical necessity, the legislature has authorized telephonic testimony and its less-formal oath, but only in restricted circumstances. Judge Ashman specifically found that those circumstances did not exist in Burrece's case.
Because there was no justification for the district court's violation of AS 12.35.015(a), and because Bleicher's telephonic testimony appears to have been material to the issuance of the search warrant, I conclude that Burrece should be entitled to a reversal of her conviction if one other condition is met: if, as a legal matter, a knowing violation of AS 12.35.015(a) requires suppression of the resulting evidence.
This questionwhether courts should apply the exclusionary rule to purposeful violations of AS 12.35.015(a)has no easy answer. Moreover, the parties have thus far failed to address this issue. I would order the parties to brief this issue, and, if suppression is indeed the remedy for a violation of the statute, I would reverse Burrece's conviction.
NOTES
[1] AS 11.71.040(a)(5).
[2] See Cooksey v. State, 524 P.2d 1251, 1255-57 (Alaska 1974).
[3] See Snyder v. State, 661 P.2d 638, 646-47 (Alaska App.1983).
[4] See id. at 647.
[5] See id. at 647-48.
[6] See id. at 645.
[7] Simmons v. State, 899 P.2d 931, 934 (Alaska App.1995).
[8] AS 12.35.015(a) provides:

A judicial officer may issue a search warrant upon the sworn oral testimony of a person communicated by telephone or other appropriate means, or sworn affidavit transmitted by facsimile machine, if the judicial officer finds that there is probable cause to believe that
(1) the presentation of the applicant's affidavit or testimony personally before the judicial officer would result in delay in obtaining a search warrant and in executing the search; and
(2) the delay might result in loss or destruction of the evidence subject to seizure.
[9] See AS 12.35.015(f) ("Absent a finding of bad faith, evidence obtained under a warrant issued under this section is not subject to a motion to suppress on the ground that the circumstances did not support its issuance under (a) of this section.").
[10] See Zsupnik v. State, 789 P.2d 357, 361 (Alaska 1990); Ward v. State, 758 P.2d 87, 90 (Alaska 1988); Copelin v. State, 659 P.2d 1206, 1214-15 (Alaska 1983); State v. Sundberg, 611 P.2d 44, 50-52 (Alaska 1980); Nathan v. Anchorage, 955 P.2d 528, 533 (Alaska App.1998); Harker v. State, 637 P.2d 716, 719-20 (Alaska App.1981).
[11] Cf. Zsupnik, 789 P.2d 357, Ward, 758 P.2d 87, and Copelin, 659 P.2d 1206, with Sundberg, 611 P.2d 44, Nathan, 955 P.2d 528, and Harker, 637 P.2d 716.
[12] Sundberg, 611 P.2d at 50.
[1] Dissent at page 247.
[2] AS 12.35.015(a)(2).
[1] AS 12.35.010(b) states, "A judicial officer may issue a search warrant upon the sworn oral testimony of a person communicated by telephone or other appropriate means, or sworn affidavit submitted by facsimile machine, in accordance with AS 12.35.015."

The pertinent language of AS 12.35.015 is discussed in this dissent.
[2] Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). See State v. Jones, 706 P.2d 317, 324-25 (Alaska 1985) (holding that, as a matter of Alaska law, the Aguilar-Spinelli test continues to govern the evaluation of hearsay information offered to support a search or seizure).