Cameron L. WINFREY, Appellant,

v.

STATE of Alaska, Appellee.

No. A–8332.

Court of Appeals of Alaska.

Oct. 16, 2003.

---

Geoffry B. Wildridge, Assistant Public Defender, Fairbanks, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Kim S. Stone, Assistant District Attorney, Teresa Foster, District Attorney, Fairbanks, and Gregg D. Renkes, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## *OPINION*

COATS, Chief Judge.

Cameron Winfrey was convicted of driving while intoxicated.[1] He appeals, claiming that the district court erred when it denied his motion to suppress the results of the breath test after finding that state troopers had interfered with his right to make a phone call under AS 12.25.150(b). He also claims that the district court erred when it excluded on relevancy grounds evidence that the troopers had decided to stop videotaping breath test-

---

1. Former AS 28.35.030(a) (2001).

ing procedures because the videotapes made prosecuting drunk drivers harder. On the first issue, we agree with the district court that suppression was not warranted because, as the district court found, neither of Winfrey's requests to make a phone call was related to the breath test. As for the second issue, we believe that the evidence Winfrey sought to admit was relevant; however, based on the inadequacy of Winfrey's offer of proof, and considering the strength of the State's case, we find that any possible error was harmless.

*Facts and proceedings*

On July 14, 2001, Alaska State Trooper Jeff Jones was driving on Chena Pump Road in Fairbanks near Cheyenne Court when an oncoming vehicle swerved in front of him, crossed completely over his lane of travel, and then left the road, coming to rest in the ditch. Jones activated his vehicle's emergency lights and turned around. As he did so, the driver of the vehicle, later identified as Winfrey, got out of the vehicle and ran into some nearby woods. Other troopers arrived to help Jones track Winfrey down.

At least twice, troopers spotted Winfrey, who continued to run from them. One of the troopers chasing Winfrey saw that as he ran, he was "having a hard time ... keeping himself balanced." Winfrey, because of his weaving, "was hitting trees. I mean, he was actually literally bouncing off trees." Approximately forty-five minutes after he had fled from his vehicle, Winfrey was apprehended and placed in Jones's vehicle. When they apprehended him, the troopers saw that Winfrey "could hardly stand, he swayed, staggered would be more correct. He had bloodshot watery eyes, [and] ... an odor of alcohol ... [that] was fairly strong." He also had slurred speech, and he failed the only two field sobriety tests the troopers gave him—the horizontal gaze nystagmus test, and a test that required him to count backwards. He was arrested for driving while intoxicated and transported to the Alaska State Trooper post in Fairbanks. When he was tested on a DataMaster, his breath alcohol content was .221 percent.

Before trial, Winfrey moved to suppress the results of the DataMaster test. He claimed that his right under AS 12.25.150(b) to make a telephone call had been violated. An evidentiary hearing was held, during which Jones, Winfrey, and Winfrey's wife testified.

Jones testified that Winfrey did not ask to use the phone. Winfrey, however, testified that he had asked Jones while being transported to the trooper post if he could use Jones's cell phone to call his wife to arrange bail, and that Jones responded that he could use a phone later when they got to jail. Winfrey also said that at the post, while Jones was attending to other business, he asked an unidentified female trooper if he could use the phone; although this trooper spoke with Winfrey, Winfrey said she did not respond to his request to use a phone. Winfrey's wife testified that when she picked Winfrey up at the jail, he complained that he had tried to use a phone earlier while in custody to arrange for bail.

After the hearing, District Court Judge Mark I. Wood denied Winfrey's motion to suppress. Judge Wood found that Winfrey had twice asked to use the phone, and that he had done so each time to arrange for bail. Based on these findings, Judge Wood ruled that the troopers had violated Winfrey's right under AS 12.25.150(b) to call his wife. However, Judge Wood held that suppression of the breath test result was not warranted because Winfrey's requests to use the phone were not related to the breath test.

Later, District Court Judge Jane F. Kauvar presided over Winfrey's jury trial. During this trial, Winfrey asked to call a trooper he claimed would testify that the troopers had made a deliberate decision to stop videotaping detainees during breath tests because "people look too good on the videotape"— that is, because detainees appeared too sober. Judge Kauvar excluded this evidence, ruling that it was not relevant to Winfrey's case. The jury found Winfrey guilty of driving while intoxicated. He now appeals.

*Did the violations of AS 12.25.150(b) require suppression of the DataMaster results?*

■ Winfrey claims that Judge Wood erred when he refused to suppress the Data-

Master breath test results after finding that both troopers had violated his right to contact a relative or friend under AS 12.25.150(b).[2] Judge Wood based his suppression ruling on the supreme court's decision in *Zsupnik v. State.*[3]

In *Zsupnik,* the supreme court, expanding its holding in *Copelin v. State*[4] on the right of an arrestee to contact an attorney, ruled that drivers detained for drunk driving are also entitled to call a friend or relative before deciding whether to submit to a breath test.[5] The defendant in *Zsupnik* made "four separate requests to telephone her uncle. All were denied. Zsupnik's fourth request was specific: she wanted to call her uncle to ask for advice as to 'what to do.' "[6] The supreme court ruled that the police had violated Zsupnik's right under AS 12.25.150(b) when they denied her request to call her uncle.[7] The court said that the right defined in AS 12.25.150(b) is clear: "Subsection (b) is intended to give the prisoner a right 'to call *both his relatives and a lawyer.'* The legislature expressly disapproved the then prevalent practice of allowing a prisoner only one phone call to only an attorney."[8]

Having expanded the statutory right it recognized in *Copelin,* the court next addressed the appropriate remedy when police violated this limited statutory right. Noting that Zsupnik wanted to call her uncle in order to contact an attorney,[9] a majority of the court concluded that "[i]t is settled that the remedy for violations of AS 12.25.150(b) for *purposes related to the defense process* is

exclusion of tainted evidence."[10] The majority reasoned that exclusion of the breath test result would deter future intentional police interference with an arrestee's right to make a phone call for defense purposes.[11]

The majority, however, added that it "need not reach the issue of whether the refusal of calls by an arrestee for purposes other than obtaining attorney assistance requires the exclusion of evidence."[12] On the other hand, the two dissenting justices opposed application of the exclusionary rule to cases where the arrested person was not attempting to contact an attorney, reasoning that reliable evidence of crimes should not be excluded "where there has been no serious interference with the defendant's ability to prepare her defense."[13]

Although Judge Wood found that both troopers had violated Winfrey's right under AS 12.25.150(b), he also found that Winfrey had told both troopers that he wanted to make the phone call to arrange for bail.

Applying *Zsupnik* in Winfrey's case, Judge Wood ruled that even though the state troopers had interfered with Winfrey's right under AS 12.25.150(b), this statutory violation did not warrant suppression of Winfrey's breath test result because Winfrey did not want to use the phone for a purpose related to the breath test. Judge Wood's decision is based on the distinction between police interference with a phone call requested for purposes related to a defense function and police interference with a phone call requested for other

---

2. AS 12.25.150(b) provides in relevant part that "[i]mmediately after an arrest, a prisoner shall have the right to telephone or otherwise communicate with the prisoner's attorney and any relative or friend, and any attorney at law entitled to practice in the courts of Alaska shall, at the request of the prisoner or any relative or friend of the prisoner, have the right to immediately visit the person arrested."

3. 789 P.2d 357 (Alaska 1990).

4. 659 P.2d 1206, 1215 (Alaska 1983) (concluding that "when a person is arrested for operating a motor vehicle while intoxicated and asks to consult a lawyer, AS 12.25.150(b) and Criminal Rule 5(b) mandate that the arrestee be afforded the right to do so before being required to decide whether to submit to a breathalyzer test").

5. *Zsupnik,* 789 P.2d at 360–61.

6. *Id.* at 358.

7. *Id.* at 360–61.

8. *Id.* at 359 (citation omitted) (emphasis in *Zsupnik* ).

9. *Id.* at 361 n. 4.

10. *Id.* at 361 (emphasis added).

11. *Id.*

12. *Id.* at 361 n. 4.

13. *Id.* at 364 (Matthews, C.J., and Rabinowitz, J., dissenting).

purposes. We agree with Judge Wood's interpretation of *Zsupnik.*

Although a majority of the supreme court applied the exclusionary rule in *Zsupnik,* they did not mandate exclusion of evidence for all violations of AS 12.25.150(b). Instead, the majority held that "the remedy for violations of AS 12.25.150(b) for purposes related to the *defense process* is exclusion of tainted evidence." [14] As explained earlier, the supreme court did not decide whether the refusal of a call for a non-defense purpose required suppression of breath test evidence, and the dissenting justices argued for applying the exclusionary rule only in cases where the arrested person was obstructed in contacting an attorney.

Here, Judge Wood's decision is consistent with prior Alaska decisions discussing the application of the exclusionary rule when statutory rights have been violated.[15] For instance, in *Nathan v. Anchorage,*[16] which involved a violation of the Americans with Disabilities Act, we recognized the limited circumstances in which the exclusionary rule is applied when the police violate a statute rather than the constitution:

> [W]hen the government has violated a statute (as opposed to the Constitution), suppression of evidence has generally been imposed only when the government's violation of the statute demonstrably preju-

diced a defendant's ability to exercise related constitutional rights or to prepare or present a defense.[17]

Winfrey did not at argue at the evidentiary hearing (nor does he on appeal) that the government's violations of AS 12.25.150(b) demonstrably prejudiced his ability to exercise related constitutional rights or to prepare or present a defense. Hence, Judge Wood correctly concluded that there was no reason to suppress the breath test results, given that Winfrey wanted to use the phone only to arrange for bail and not for any discernible defense purpose. Stated another way, there was no connection between the right violated and the evidence Winfrey wanted excluded, hence there was no "tainted evidence." [18]

■ Although Winfrey argues that he never told the state troopers why he wanted to use the telephone, Judge Wood rejected this contention. He found that Winfrey told both troopers that the reason he wanted to use the telephone was to arrange for bail. While we acknowledge that at the evidentiary hearing Winfrey did not expressly say what he told the troopers, we conclude that Judge Wood's findings are based on reasonable inferences drawn from Winfrey's and his wife's testimony.[19] These findings are not clearly erroneous.[20] Additionally, while Winfrey

---

**14.** *Id.* at 361 (emphasis added).

**15.** *Compare Ward v. State,* 758 P.2d 87, 90 (Alaska 1988) (exclusionary rule applied when the police deprived the defendant of his statutory right to an independent blood test, thereby impeding the defendant's ability to present a defense), *with Burrece v. State,* 976 P.2d 241, 244 (Alaska App.1999) (exclusionary rule not applied to suppress evidence obtained pursuant to a telephonic warrant where the judge did not follow statutory procedure in issuing the warrant, and where there was no bad faith); *Nathan v. Anchorage,* 955 P.2d 528, 533 (Alaska App.1998) (exclusionary rule not applied for violation of Americans with Disabilities Act); *Harker v. State,* 637 P.2d 716, 719–20 (Alaska App.1981) (exclusionary rule not applied to violation of Posse Comitatus Act); *State v. Sundberg,* 611 P.2d 44, 50–52 (Alaska 1980) (in the absence of a legislative directive, exclusionary rule not applied where arrests were accompanied by excessive force on the part of the police); *see also Zsupnik,* 789 P.2d at 361; *Copelin,* 659 P.2d at 1214–15.

**16.** 955 P.2d 528.

**17.** *Id.* at 533.

**18.** *See Zsupnik,* 789 P.2d at 361; *cf. Smith v. State,* 948 P.2d 473, 477 (Alaska 1997) (quoting *Erickson v. State,* 507 P.2d 508, 516 (Alaska 1973)) ("Once a causal connection is established between the proffered evidence and the primary illegality, the evidence must be excluded unless if falls within [some exception].").

**19.** *See Stumbaugh v. State,* 599 P.2d 166, 172 (Alaska 1979) (when reviewing a denial of a motion to suppress, appellate courts "view the record in the light most favorable to upholding the trial court's ruling").

**20.** *See Chilton v. State,* 611 P.2d 53, 55 (Alaska 1980); *see also Nathan,* 955 P.2d at 531 (citation omitted) (A finding is clearly erroneous only when an appellate court is left with a "definite and firm conviction ... that a mistake has been made, even though there may be evidence to support the [trial court's] finding."); *Wilburn v. State,* 816 P.2d 907, 911 (Alaska App.1991) (citation omitted) ("We will reverse the trial court's

challenges Judge Wood's finding that Winfrey wanted to make a phone call to arrange for bail, he conceded in his argument at the hearing that this was indeed his purpose.

■ Winfrey now argues that an arrestee's ultimate reason for wanting to make a phone call is unimportant. He asserts that the supreme court in *Zsupnik* intended courts to apply the exclusionary rule regardless of an arrestee's underlying reason for wanting a phone call, to ensure that the police honor the arrestee's request. But as explained above, suppression of evidence for violations of a statutory right has generally been imposed only when the government's violation of the statute demonstrably prejudiced a defendant's ability to exercise related constitutional rights or to prepare or present a defense. Nothing in *Zsupnik* indicates that the supreme court intended to change this general rule. Moreover, Winfrey has advanced no evidence of a pattern of purposeful violations by police of AS 12.25.150(b).[21] Accordingly, we conclude that the exclusionary rule does not apply to violations of AS 12.25.150(b) that are unrelated to the breath test or some other defense purpose.

*Did the trial court err when it ruled that evidence that the troopers had decided to no longer videotape the breath test procedures was not relevant?*

■ During Winfrey's trial, Judge Kauvar excluded on relevancy grounds evidence that Winfrey claimed would show that the state troopers had made a policy decision to stop videotaping suspects during breath test processing because the suspects often did not look intoxicated, making prosecutions harder. To introduce this testimony, Winfrey wanted to call a state trooper who was not involved in his drunk driving arrest or processing.

After the State objected, Winfrey made the following offer of proof: "Basically, what [the trooper] would say is that [the state troopers] decided that people look too good on the video and so they decided not to do it anymore."

Winfrey argued that this testimony was relevant to show two things: first, that the troopers, by not videotaping drunk driving suspects, were violating their duty "to do the best job they can to preserve evidence"; second, that the troopers were acting in bad faith because they had deliberately decided to prevent juries from reviewing evidence that contradicted troopers' claims that a suspect was acting intoxicated. But Judge Kauvar rejected these reasons, pointing out that the troopers had no duty to videotape drunk driving suspects. She then ruled that a decision made five years before Winfrey was arrested for drunk driving was not relevant to his case. Winfrey claims this was error.

On appeal, Winfrey argues that evidence that the troopers deliberately stopped collecting evidence because it often contradicted the breath test results or witnesses' testimony about how intoxicated a suspect looked or acted is relevant. We agree with Winfrey. While we recognize that the due process clause has "never required [police] officers to undertake a state-of-the-art investigation of all reported crimes,"[22] or to "track down every conceivable investigative lead and seize every scintilla of evidence regardless of its apparent importance or lack of importance at the time,"[23] we believe that it would be relevant if the troopers decided to stop collecting a particular type of evidence in drunk driving cases because the evidence tended to be favorable to defendants.

■ In this case, it is not clear from Winfrey's offer of proof that the trooper could have given admissible testimony on this is-

factual findings only if they are clearly erroneous. Reversal is proper only where there is no substantial evidence supporting the trial court's findings.").

**21.** *Cf. Sundberg*, 611 P.2d at 52 ("In the event a history of excessive force arrests is shown, demonstrating that existing deterrents are illusory, we will not hesitate to reexamine the question of whether an exclusionary deterrent should be fashioned...."); *Nathan*, 955 P.2d at 533 (noting, in declining to apply the exclusionary rule, the absence of evidence of persistent, purposeful violations of the statute).

**22.** *March v. State*, 859 P.2d 714, 716 (Alaska App.1993).

**23.** *Id.* (quoting *Nicholson v. State*, 570 P.2d 1058, 1064 (Alaska 1977)).

sue. But even if we assume that the trooper would have testified in accordance with Winfrey's proffer, and that Winfrey could have shown that the testimony was otherwise admissible, we conclude that any error in excluding this testimony was harmless.

Although the State has not argued harmless error, the State's case against Winfrey was overwhelming. Trooper Jones saw Winfrey driving dangerously; he watched as Winfrey's oncoming vehicle swerved in front of him, crossed completely over his lane of travel, and then landed in the ditch. While Jones was turning his vehicle around, Winfrey fled, running into nearby woods. As the troopers pursued Winfrey, they saw that he appeared to be intoxicated. A trooper chasing Winfrey noted that Winfrey had "a hard time . . . keeping himself balanced." Winfrey, because of his intoxication, was "literally bouncing off trees." When Winfrey was finally caught, approximately forty-five minutes after he had fled from his vehicle, he "could hardly stand, he swayed, staggered would be more correct. He had bloodshot watery eyes, [and] . . . an odor of alcohol . . . [that] was fairly strong." Winfrey also had slurred speech, and he failed the field sobri-

ety tests the troopers gave him. When Winfrey was later tested on a DataMaster, his breath alcohol content was .221 percent. We additionally note that during the cross-examination of Trooper Jones, Winfrey was able to introduce evidence that the troopers had stopped videotaping drunk drivers at least three years before Winfrey's arrest. Thus, he could have argued to the jury that the troopers had stopped videotaping arrestees during breath tests because the evidence was unfavorable to the prosecution.

Given all of these facts, we conclude that any potential error in excluding Winfrey's proffered evidence could not have affected the jury's verdict.

*Conclusion*

Winfrey's conviction is AFFIRMED.